DICKSON, Respondent, vs. INDUSTRIAL COMMISSION and another, Appellants.

*January 11—February 5, 1952.*

66

For the appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent there was a brief by *Gold & McCann,* and oral argument by *William R. Gold,* all of Milwaukee.

GEHL, J. This appeal presents the question whether at the time of his injury Dickson was going "from his employment in the ordinary and usual way, while on the premises of his employer," sec. 102.03 (1)(c), Stats.

That part of the employer's property facing South Seventieth street in West Allis, a north-and-south street, is inclosed by a fence. Adjacent to the property and outside the fence is a thirty-foot right of way, the east half of which is owned by the employer and the west half by the city of West Allis. Upon the right of way are two streetcar tracks owned by the so-called traction company. To the west of the right of way is the street. From gate 5 in the employer's fence extends a paved pathway across the streetcar tracks. In 1938 the employer and the traction company entered into an agreement, still in effect at the time in question, by the terms of which permission was granted to the employer to construct and maintain the pathway across the tracks upon condition that the employer assume all liability with respect to loss or damage sustained by any person by the negligent or wrongful acts of the employer or its agents, during its construction and maintenance and during its presence or use upon the property.

Upon the fence facing the plant and adjacent to the gate there was a sign "Danger Street Car Crossing" and a flasher signal to warn of the approach of streetcars.

North of gate 5 there is a tunnel under South Seventieth street for ingress to and egress from the plant. This tunnel was customarily used by Dickson and other employees to reach the premises for work. For departure he was required to leave by the gate.

On the day in question Dickson left his job through gate 5 to reach his automobile which, by permission of the employer, had been parked on a lot owned by the company on the opposite side of South Seventieth street. While on the path he was struck and injured by a streetcar traveling on the west set of tracks.

The commission found that at the time of his injury Dickson "was not on the premises of his employer; that he was, therefore, not performing services growing out of and incidental to his employment" and denied him compensation. The commission called attention to the fact that when he was hurt he was upon that portion of the right of way the fee to which was in the city of West Allis.

We are unable to distinguish the essential facts in this case from those appearing in *International Harvester Co. v. Industrial Comm.* 220 Wis. 376, 265 N. W. 193. In that case the employee, on his way to work, was injured while on a part of the premises of the employer which was separated from that part of its land occupied by its plant by a public street. The land across the street was open and was traversed by a number of paths which were used by the employees of the company and the public as a short cut. It was held that the employee was not injured on the "premises of his employer" so as to entitle him to the benefits of the act.

Counsel for respondent have pointed out in a most convenient manner the respects in which they claim the cases present distinguishable factual situations. It is not important that in the *Harvester Co. Case* the applicant was injured while in a block away from the plant. Our attention has been called to no case in which it has been considered that the distance which the employee has covered in leaving his actual place of work is a determining factor. While it appears that only employees and licensees were permitted entry and exit through gate 5, it does not appear that the public was denied use of that part of the path which Dickson had reached when he was injured, the part the fee to which was in the city and which we must assume was open to the public for travel. His route from work logically and conveniently took Dickson to gate 5; the same is true in the *Harvester Co. Case*—the route taken by the employee was a convenient one. That he was told to use gate 5 is not a distinguishing factor; that direction did not extend the limits of the employer's premises. By its agreement with the traction company the employer did not acquire dominion or control over the part of the right of way upon which Dickson was injured so as to make it a part of its premises— that would have been impossible, for it was the city's property; it merely undertook to keep it in repair and to hold the traction company harmless against any claim for injury resulting from the construction and maintenance of the path. That the employer built the path for the use of its employees does not distinguish the case; suppose that for the convenience of its employees the company had, with permission, built a sidewalk in a city street for the same purpose,—would that extend the limits of its premises so as to include the walk? The placing of warning signals at a point near the gate did not affect the obligation of the employer, nor did it operate to make the city's property a part of its premises.

The similarity between the facts of this case and those involved in the *Harvester Co. Case* is indicated in the court's language in that case (pp. 376, 384):

"The appellant maintains a plant north of West Bruce street in the city of Milwaukee, which plant is completely inclosed by the brick walls of the buildings or a fence. It is impossible to enter these premises except from the public highway, and one must go through the main gate, the west gate, the medical office, or the employment office. To enter this inclosure one must have a pass or identification card showing that he is an employee of the Harvester Company. The applicant's place of employment was in a building within the inclosure, and all of his work was within said building. . . .

"In the instant case, the Harvester Company had inclosed its place of employment by brick walls and iron fence, and entrance could be gained only through guarded gates on presentation of an identification card showing that the person was an employee of the company. By such physical barriers and regulation as to entrance at the gate, it effectively marked the limits of its premises."

We conclude that the Allis-Chalmers Company had limited its premises just as effectively as did the employer in the *Harvester Co. Case,* and that the commission properly determined that the rule of the latter required it to conclude that Dickson was not injured "while on the premises of his employer."

*By the Court.*—Judgment reversed.